UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 19-322 (JRT/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER AFFIRMING R&R** |
| DEMETRICE DEVON MILLER, | |
| Defendant. | |

Benjamin Bejar, Assistant United States Attorney **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for plaintiff.

Douglas Olson, Assistant Federal Defender, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for defendant.

Defendant Demetrice Devon Miller objects to the Report and Recommendation ("R&R") issued by Magistrate Judge Tony Leung recommending that the Court deny Miller's Motion to Suppress Statements, Admissions, and Answers.  Because the Magistrate Judge did not err in applying the "public safety" exception to *Miranda* requirements, the Court will adopt the R&R and overrule Miller's Objections as to Miller's statements about the guns.  Furthermore, because the Magistrate Judge did not err in finding that Miller's two statements in the hospital were voluntary, that the *Miranda* warnings were sufficient, and that Miller's waiver of *Miranda* rights was knowing and

intelligent, the Court will adopt the R&R and overrule Miller's Objections as to Miller's two statements in the hospital.

## BACKGROUND

There are no objections to the factual statements contained in the Magistrate Judge's R&R, which the Court adopts and summarizes here. On November 23, 2019, two St. Paul police officers initiated a traffic stop in a densely populated residential area. (R&R at 3, April 27, 2020, Docket No. 40.) Miller ran from the vehicle, and the officers pursued him into an alley, when they heard a single gunshot. (*Id.*) Miller had accidentally shot himself in the stomach while running away. (*Id.* at 4-5.) The officers saw Miller fall to the ground, and Officer Sean Higgins yelled at Miller, "Where's the gun?" (*Id* at 4.) Miller pointed towards his feet, where the officers found two guns. (*Id.*) After the officers handcuffed Miller and provided first aid, Higgens confirmed with Miller that there were only two guns. (*Id.*) Higgens explained at a hearing before the Magistrate Judge that a gunshot and a gunshot wound are emergent circumstances, and that he was concerned about the public's safety and also the safety of the emergency personnel coming to assist Miller. (*Id.* at 5.) Higgens did not read Miller his *Miranda* rights. (*Id.*)

Two days later, on November 25, Sergeant Thomas Arnold and his partner went to speak with Miller at the hospital, after asking permission from hospital staff. (*Id.* at 6.) Miller was awake and conscious, and handcuffed to the hospital bed. (*Id.*) Arnold testified that he "could assume" Miller was on some sort of medication, but he did not

know any details. (*Id.*) Arnold read Miller his *Miranda* rights, and Miller acknowledged them but was unable to sign a waiver form because he was handcuffed to the bed. (*Id.*) Arnold asked Miller questions about the traffic stop and the guns, and after about four minutes, Miller told Arnold that he was "done talking about it." (*Id.*) Six minutes later, Miller asked if the Sergeant would come back tomorrow because he was in too much pain to continue talking. (*Id.*) The Magistrate Judge found that Miller spoke softly, and that Arnold addressed him in a direct, matter-of-fact manner. (*Id.* at 7–8.) Arnold testified that Miller made eye contact, responded appropriately, and did not appear to be under the influence, though he did show signs of being in pain. (*Id.* at 6.)

The next day, on November 26, Arnold returned to the hospital, asked and received permission from medical staff, and visited Miller. (*Id.* at 8.) Miller said he was feeling much better; he was still handcuffed to the bed. (*Id.*) Miller agreed that he had told Arnold he could come back; Miller also said that he would tell Arnold what he wanted to know if Arnold would tell Miller what he wanted to know. (*Id.*) Arnold did not re-read Miller's *Miranda* rights, but instead reminded Miller that he had read him his *Miranda* rights yesterday, that those rights still applied, and that Miller did not have to speak to him and could ask for an attorney. (*Id.*) Miller agreed that he understood. (*Id.*) Miller then went on to make several incriminating statements. (*Id.* 8–9.) The Magistrate Judge found that Miller spoke softly, though louder than the previous day, and that Arnold addressed him in a direct, forthright, and respectful manner. (*Id.* at 10.) Arnold testified

that Miller was conscious, spoke in a normal tone of voice, and responded appropriately. (*Id.* at 6.) Arnold testified that at no point did Miller display outward indications that he was under the influence of narcotics, but that he did not ask Miller what medication he was taking. (*Id.* at 10.)

## DISCUSSION

### I. STANDARD OF REVIEW

After an R&R is filed by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Crim. P. 59(b)(2). For a dispositive matter such as a motion to suppress evidence, "[t]he district judge must consider de novo any objection to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(1), (3); see also 28 U.S.C. § 636(b)(1).

### II. PUBLIC-SAFETY EXCEPTION

Miller argues that the Magistrate Judge erred in applying the public-safety exception to Miller's statements about the two guns found by police in the alley.

The public-safety exception applies to questions from a police officer asked in the absence of a *Miranda* warning, and renders the defendant's answers admissible when "the questions asked of the suspect are reasonably prompted by a concern for the public safety." *United States v. Williams*, 181 F.3d 945, 953 (8th Cir. 1999) (internal quotations omitted).

Miller argues that there was no on-going emergency at the time the officer asked about the guns because Miller was already injured on the ground. However, courts

regularly apply the public-safety exception even when the suspect is restrained, because the threat to the public and to the officers is not only from the suspect.  *See, e.g.*, *id.* at 953–54 (finding that ["[a]lthough Williams'[s] hands were cuffed behind his back" when officers questioned him, "the officers could not have known whether other hazardous weapons were present in the apartment that could cause them harm if they happened upon them unexpectedly or mishandled them in some way" (footnote omitted)).  Here, a gun was fired in a residential neighborhood, and the officers were justified in asking about the guns in order to protect neighbors, themselves, and emergency medical assistance from unsecured firearms.

Accordingly, the Court will overrule Miller's Objections and Adopt the R&R as to the statements regarding the guns.

### III.   STATEMENTS TAKEN AT THE HOSPITAL

Miller argues that the Magistrate Judge erred in finding that Miller's *Miranda* waivers at the hospital were knowing and voluntary.  In considering the validity of a *Miranda* waiver, courts look at the totality of the circumstances, including the defendant's intelligence, education, age, familiarity with the criminal justice system, and the explicitness of the waiver.  *United States v. Vinton*, 631 F.3d 476, 482–83 (8th Cir. 2011).

### A. Knowing and Intelligent Waiver

First, Miller argues that he could not have knowingly and intelligently waived his rights because he was in the hospital recovering, and was handcuffed to his hospital bed. "To make a knowing and intelligent waiver, the defendant must have 'full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *United States v. Gallardo*, 495 F.3d 982, 990 (8th Cir. 2007) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

Here, the fact that Miller was in the hospital and was handcuffed to his bed, while relevant to the analysis, is not sufficient to override the myriad of facts indicating that Miller made a knowing and intelligent waiver. For instance, the Magistrate Judge found (and Miller does not contest) that Miller was coherent and did not appear to be under the influence of medication. Miller was familiar with the criminal justice system, and the evidence supports the finding that he understood the process and was aware of the rights he was giving up. Accordingly, the Court will deny Miller's Objection and will adopt the R&R.

### B. Voluntariness

Miller argues that his waiver could not be voluntary because he was hospitalized and under the influence of medication. "Custodial statements are not per se involuntary because of intoxication." *United States v. Wright*, 706 F.2d 828, 830 (8th Cir. 1983). Instead, courts review whether, "by reason of intoxication or other factors, the

defendant's 'will was overborne' or whether his statements were the 'product of a rational intellect and a free will.'" *Id.* (*quoting United States v. Brown*, 535 F.2d 424, 427 (8th Cir. 1976)).

Here, although it appears likely that Miller was receiving medication, there is no evidence to suggest that his will was overborne at any point. As noted above, Miller was coherent and did not appear to be under the influence. Furthermore, the conversations were polite, forthright, and short, and although Miller spoke in a soft tone, there is every indication that Miller's *Miranda* waivers, and subsequent conversations with Arnold, were voluntary. Accordingly, the Court will deny Miller's Objection and will adopt the R&R.

### C. Second *Miranda* Warning

Finally, Miller repeats the argument he previously made before the Magistrate Judge that Arnold was required to repeat the *Miranda* warnings prior to the second interview because 24 hours had passed. The main purpose of *Miranda* is to ensure that an accused is advised of and understands the right to remain silent and the right to counsel. *Berghuis v. Thompkins*, 560 U.S. 370, 383 (2010). Despite Miller's assertions, there is no hard-and-fast 24-hour bar for *Miranda* warnings; instead, whether a full *Miranda* rereading is necessary depends on the circumstances of the interview. *See, e.g.*, *United States v. Nguyen*, 608 F.3d 368, 374–75 (8th Cir. 2010) (finding a knowing and voluntary waiver despite *Miranda* warning being given a full day prior, and only a

reminder of the *Miranda* rights prior to subsequent questioning). Here, Arnold reminded Miller that he had previously received *Miranda* warnings, that Miller did not have to speak, and that he could instead ask for an attorney. Miller agreed that he understood, and chose to speak with Arnold anyway. The lack of a formal full rereading of *Miranda* rights does not negate the knowing or voluntary nature of Miller's waiver.

### CONCLUSION

Because the Magistrate Judge did not err in finding all three of Miller's statements admissible, the Court will overrule Miller's Objections and Adopt the R&R.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, Miller's Objections to the R&R [Docket No. 42] are **OVERRULED** and the R&R [Docket No. 40] is **ADOPTED.**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Objections to the R&R [Docket No. 42] are **OVERRULED** and the R&R [Docket No. 40] is **ADOPTED.**

2. Defendant's Motion to Suppress [Docket No. 24] is **DENIED**.

DATED: July 1, 2020  
at Minneapolis, Minnesota.

_____  
JOHN R. TUNHEIM  
Chief Judge  
United States District Court